UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RONALD WALKER,

              Plaintiff,

        -against-

THE CITY OF NEW YORK; POLICE
OFFICER KEITH HENNIN, Shield # 23794,
LIEUTENANT ELIZABETH MORRISSEY;
SERGEANT CHRISTOPHER BARBIERI,
Shield # 210; POLICE OFFICER ANDREW
WATSON, Shield # 30737,

              Defendants.
-----------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-CV-314 (CBA)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 2 8 2015 ★

BROOKLYN OFFICE

AMON, Chief United States District Judge:

After a jury returned a verdict against defendants on claims arising out of the arrest of

plaintiff Ronald Walker ("Walker") on January 22, 2010, plaintiff moved for attorney's fees and

costs.[1] For the reasons set forth below, the Court awards plaintiff $219,484.75 in fees and

$2,272.96 in costs plus interest.

## BACKGROUND

The Court assumes familiarity with the facts and procedural history of this case as laid

out in its September 3, 2014 Opinion (DE #141) (hereinafter "Post-Trial Opinion") and therefore

summarizes only those facts relevant to the pending fee motion.

Walker asserted nine claims at trial: false arrest, excessive pre-arraignment detention,

excessive force, failure to intervene, malicious prosecution, fabrication of evidence, denial of

medical treatment, assault and battery, and negligence. (Id. at 3, 8.) He withdrew his denial of

---

[1] On May 15, 2014, the Court referred plaintiff's motion to then-Magistrate Judge Joan M. Azrack for report and recommendation. After Judge Azrack's appointment as a district judge, the Court withdrew that referral and opted to consider plaintiff's fee motion itself. (DE #152 at 1.)

1

medical treatment claim before the jury was charged. (Trial Tr. at 880.) In addition, the Court dismissed his state law claim for excessive pre-arraignment detention, but permitted the analogous federal claim to proceed. (Id. at 955-56.)

The jury returned a verdict in favor of plaintiff on five of the eight remaining claims and awarded a total of $260,000. (Post-Trial Op. at 8-9.) On the excessive pre-arraignment detention and fabrication of evidence charges, the jury found defendant Hennin liable and imposed $125,000 in compensatory and punitive damages. (Id.) The jury awarded another $85,000 based on its findings that defendant Morrissey and "Another Employee" used excessive force and that defendant Barbieri failed to intervene. (Id. at 9.) Finally, Walker received an award of $50,000 due to the finding that the City of New York was liable for the state law assault and battery claims. (Id.) The jury found for defendants on the false arrest and malicious prosecution claims and did not reach the negligence issue. (Id. at 8-9.)

After the jury returned its verdict, defendants renewed an earlier motion for judgment as a matter of law, and Walker simultaneously filed an application seeking $306,552.13 in fees and $5,232.96 in costs.[2] (Id. at 3; Am. Aff. of David Zelman in Support of Pl.'s App. for Atty's Fees & Expenses ("Zelman Aff."), DE #138.) On September 3, 2014, the Court granted defendants' motion and awarded judgment as a matter of law to Hennin and Morrisey. (Post-Trial Op. at 34-35.) Consequently, the verdict was reduced from $260,000 to $95,000 and Judgment was entered. (Id.; DE #142.) Walker's appeal of that Order is currently pending before the Second Circuit Court of Appeals. (DE #143-44.)

_____

[2] Plaintiff later sought an additional $25,125 in fees for (1) post-trial motion practice, (2) briefing a reply to defendants' opposition to plaintiff's application for fees and costs, and (3) drafting a letter to the Court regarding plaintiff's degree of success in light of the Post-Trial Opinion. (DE #139, 146.) By letter dated May 5, 2015, plaintiff again increased the amount of fees sought based on increased billing rates. (DE #153.)

On October 10, 2014, then-Magistrate Judge Azrack held a conference with the parties regarding Walker's pending fee motion. (DE #145.) Judge Azrack permitted the parties to submit additional briefing addressing the impact of the Court's Post-Trial Opinion on that motion and set a deadline of October 22, 2014 for defendants and October 29, 2014 for plaintiff. (Id.) On November 3, 2014, plaintiff filed an untimely letter contending that no reduction was warranted. (DE #146.) Defendants did not submit additional briefing.

By Order dated April 21, 2015, the Court raised sua sponte a number of issues in connection with plaintiff's fee application. (DE #152.) The Court granted leave for plaintiff to file a supplemental brief on those issues and afforded defendants an opportunity to respond to that submission. (Id. at 3.) Plaintiff timely filed a letter addressing those issues on May 5, 2015. (DE #153.) Defendants did not submit a response.[3]

## DISCUSSION

Defendants do not dispute that Walker is entitled to an award of fees and costs pursuant to 42 U.S.C. § 1988 and Rule 54(d) of the Federal Rules of Civil Procedure, but argue that the fees and costs requested are unreasonable.

## I. Attorney's Fees

In an action brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fees as part of the costs . . . ." 42 U.S.C. § 1988(b). The burden is on the party seeking fees to justify the rates claimed and the hours worked. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—[which] creates a presumptively reasonable

---

[3] It is concerning that defendants were not able to identify the rather clear-cut issues raised in the Court's April 21 Order, but even more troubling is their failure to prepare even a pro forma response to either of the Court's requests for supplemental briefing.

fee.'" Stanczyk v. City of New York, 752 F.3d 273, 284 (2d Cir. 2014) (quoting Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011)). Then, based on considerations not taken into account in calculating the lodestar, the Court may, in rare circumstances, adjust the lodestar calculation upwards or downwards. Millea, 658 F.3d at 167.

### A.    Reasonable Hourly Rate

"The reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008). In determining the "prevailing market rates for counsel of similar experience and skill," the Court may consider awards in prior cases, its own familiarity with the rates in the District and any other relevant evidence submitted by the parties. Farbotko v. Clinton Cnty., 433 F.3d 204, 209 (2d Cir. 2005). The Court may also weigh the following twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorneys' customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186 n.3 (citation omitted). In doing so, the Court "bear[s] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Id. at 190.

Generally, courts base the award on the prevailing market rate within the district where the case was litigated. Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). The presumption in favor of the forum rule controls the analysis unless a litigant can "persuasively establish that a reasonable client would have selected out-of-district counsel because doing so

4

would likely (not just possibly) produce a substantially better net effect." Id. at 175.[4] "'Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300-$450 for partners, $200-$325 for senior associates, and $100-$200 for junior associates.'" Struthers v. City of New York, No. 12-CV- 242 (JG), 2013 WL 5407221, at *7 (E.D.N.Y. Sept. 25, 2013) (quoting Akman v. Pep Boys Manny Moe & Jack of Del., Inc., No. 11-CV-3252 (MKB) (RLM), 2013 WL 4039370, at *4 (E.D.N.Y. Aug. 15, 2013); McPhatter v. M. Callahan & Assocs., LLC, No. 11-CV-5321 (NGG) (LB), 2013 WL 5209926, at *6 (E.D.N.Y. Sept. 13, 2013)). In civil rights cases, the upper end of that range is "generally 'reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields.'" Id. at *8 (quoting Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 300 (E.D.N.Y. Apr. 3, 2013)). "[T]he actual hourly rate[s] that many courts have awarded partners and solo practitioners in civil rights cases have most often been in the $300 per hour range." Small v. N.Y.C. Transit Auth., No. 03-CV-2139 (MDG), 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014) (noting, however, that there is variation in the rates awarded by the various judges in the District).

Walker initially sought $450 per hour for David Zelman and Ryan Asher, $300 per hour for Justin Denton and Matthew Lawrence, $275 per hour for Matthew Schommer, and $125 per hour for paralegal work. By letter dated May 5, 2015, Walker increased that request to $500 per

---

[4] The Court notes that although the Simmons rule is binding on it, that rule has been criticized for ignoring the "uniquely permeable" border between the Southern and Eastern Districts of New York. See Luca v. Cnty. of Nassau, 698 F. Supp. 2d 296, 300 (E.D.N.Y. 2010) (citation omitted) (noting that strict application of the forum rule ignores the fact that the "two district courthouses are each juxtaposed to the Brooklyn Bridge, within an easy stroll from each other); accord United States v. Sixty-One Thousand Nine Hundred Dollars & No Cents ($61,900.00), 856 F. Supp. 2d 484, 493 (E.D.N.Y. 2012); Siracuse v. Program for the Dev. of Human Potential, No. 07-CV-2205 (CLP), 2012 WL 1624291, at *27 (E.D.N.Y. Apr. 30, 2012); Gutman v. Klein, No. 03-CV-1570 (BMC), 2009 WL 3296072, at *2 n.1 (E.D.N.Y. Oct. 13, 2009).

hour for Zelman and Asher, $350 per hour for Denton and Lawrence, and $300 per hour for Schommer. (DE #153 at 2-3.) But he reduced the requested fee for paralegal time to $100 per hour. (Id. at 3.) Defendants argue that the rates sought for attorney time are excessive and instead propose $300 per hour for Zelman and Asher, $200 per hour for Denton and Lawrence and $100 per hour for Schommer. Defendants do not contest the paralegal rate.

      1.   <u>Zelman and Asher</u>

Plaintiff retained two attorneys to serve as lead counsel in this case. Zelman conducted discovery and handled all legal issues that arose in connection with the trial. Asher, on the other hand, was brought on late in the case to act as trial counsel.

Both attorneys have roughly a decade of experience in civil rights litigation and have tried a handful of such cases to verdict. Zelman was admitted to the bar in 1998 and manages a two-lawyer firm in Brooklyn. (Zelman Aff. at 9.) For the last 14 years, he has focused primarily on police misconduct cases. (Id. at 10.) He has handled over 100 such cases, including five that he tried or assisted in trying to verdict in federal court. (Id.) Asher was admitted to the bar in 1999 and is now an associate in a six-lawyer firm. (Id.) He was an Assistant District Attorney in Bronx County from 1998 to 2002, and has practiced in the Eastern and Southern Districts of New York since 2004. (Id.) He has handled over 25 police misconduct cases, and has tried or assisted in trying three civil rights cases to verdict in federal court. (Id.)

According to plaintiff, similarly experienced lawyers in this District routinely bill between $300 and $500 per hour for their services. (Id. at 10.) Unsurprisingly, plaintiff contends that a top-of-the-line rate is appropriate here and argues that Zelman and Asher should receive $500 per hour. (DE #153.) To support that rate, plaintiff submits an affirmation from Bryan Konoski, a lawyer in Manhattan, stating that Konoski's "usual and customary hourly rate

for . . . civil rights cases is $450." (Zelman Aff., Ex. A ¶¶ 1-4.) But that affirmation makes plain that Konoski is more experienced than Zelman and Asher. Whereas Zelman and Asher have tried only a handful of cases, Konoski has taken roughly 60 civil and criminal cases to verdict and has served as counsel in two federal death penalty cases. (Id. ¶ 3.) Because Konoski has significantly more experience than either Asher or Zelman, his hourly rate should not be the measure for the hourly rate here. See also Simmons, 575 F.3d at 176-77.

Plaintiff has identified no case in this District that awarded a rate of $500 per hour to a garden-variety § 1983 claim. Cf. Brady v. Wal-Mart Stores, Inc., No. 03-CV-3843 (JO), 2010 WL 4392566, at *4 (E.D.N.Y. Oct. 29, 2010) (noting that "[t]he market rate for civil rights litigation is lower than that for some other areas of practice"). Moreover, even plaintiff's original request for $450 sits outside the reasonable range of fees for a case of this type. The few cases in this District that have awarded fees in excess of $400 per hour involved either significantly more experienced counsel or matters materially more complicated than those presented here (or both). See, e.g., Luca v. Cnty. of Nassau, 698 F. Supp. 2d 296, 301 (E.D.N.Y. 2010) (awarding hourly rate of $400 for attorney with 25 years of experience who is "recognize[d] as an authority in his specialty" based on numerous speaking and teaching engagements); Sass v. MTA Bus Co., 6 F. Supp. 3d 238, 263 (E.D.N.Y. 2014) (awarding $425 an hour for an attorney with 33 years of experience who tried approximately 500 employment discrimination cases); In re Nassau Cnty. Strip Search Cases, 12 F. Supp. 3d 485, 498 (E.D.N.Y. 2014) (awarding $450 an hour for "first rate" representation in a large civil rights class action). Although Zelman and Asher have filed many police misconduct complaints, their actual trial experience is limited to a relatively small number of such cases, and they present no evidence that they are considered leaders or experts in the field.

Nor does plaintiff persuade the Court that the issues presented in this case were particularly novel or complex. To the contrary, defendants' post-trial motion succeeded due to plaintiff's failure to present sufficient evidence in support of certain claims, rather than because of defendants' creative legal arguments. (See Post-Trial Op. at 12-20, 22-23.) The straightforward legal nature of the claims asserted here weighs in favor of an award on the lower-end of the range. See Garland v. Cohen & Krassner, No. 08-CV-4626 (KAM) (RLM), 2011 WL 6010211, at *10-11 (E.D.N.Y. Nov. 29, 2011) (reducing rate for counsel with 17 years of experience to $300 because the "case was neither complex nor a vanguard for [the field], and it did not involve any novel issues warranting counsel's unique expertise or creativity in arguing for the extension or a new application of law").

But professional experience and legal complexity are not the only factors that the Court takes into consideration when determining a reasonable rate. See Arbor Hill, 522 F.3d at 190 n.3. Specifically, the Court notes that although this case was legally straightforward, it presented challenging facts and was likely viewed as undesirable by other attorneys. Indeed, the medical examination performed at Brookdale Hospital indicated that Walker was extremely intoxicated and had methamphetamines in his system during his altercation with the police. (Trial Tr. 587.) Moreover, Walker had a lengthy criminal record, including more than a dozen prior misdemeanor convictions and a number of prior arrests that might render him unsympathetic to a jury. (DE #80-81; July 24, 2013 Hrg. Tr. at 1-4; Trial Tr. 535.) As such, the Court recognizes that counsel took on a substantial risk of loss in accepting this representation.

Although Zelman's experience is not particularly noteworthy and that the legal landscape here was hardly unprecedented, the Court believes that, in view of the risks taken in this case, Zelman is entitled to slightly more than the $300 per hour that defendants propose. See Hicks v.

Vane Line Bunkering, Inc., No. 11-CV-8158 (KBF), 2013 WL 1747806, at *10 (S.D.N.Y. Apr. 16, 2013) (increasing rate due to undesirable and uncertain nature of the admiralty case at bar). Given the substantial success achieved on challenging facts, the Court concludes that $350 per hour is a reasonable rate for Zelman.

Despite Asher's significant role at trial, he is not entitled to the same hourly rate as Zelman. Most importantly, Asher simply has less experience than Zelman, having handled and tried significantly fewer civil rights cases. In addition, Asher is an associate at his firm, not a partner, and plaintiff has submitted no evidence showing that he demands particular respect in the field. After weighing the success achieved at trial against Asher's relatively limited civil rights experience and more junior title, the Court determines that a rate of $300 per hour—an award at the very top of the associate range—is appropriate based on the challenging facts underlying this litigation and Asher's leading role at trial.

2. Junior Associates

Each of Walker's other lawyers—Denton, Lawrence and Schommer—only worked on this matter as first-year associates or law clerks pending admission to the bar. Denton was admitted to practice in 2011 and appears to have worked on this matter from January 11, 2011 through March 12, 2012. (Zelman Aff. at 11; Zelman Aff. Ex. B at 1, 15.) Likewise, Lawrence was admitted in 2012 and billed on this matter from March 6, 2012 until June 26, 2012. (Zelman Aff. at 11; Zelman Ex. B at 15, 21.) Similarly, Schommer was admitted in 2013, began billing on the Walker matter on January 15, 2013, and submitted his final invoice on September 30, 2013. (Zelman Aff. at 11; Zelman Ex. B at 23; Zelman Reply Aff., Ex. A at 2.)

Plaintiff fails to support his proposed rates of $350 an hour for Denton and Lawrence and $300 for Schommer. The affirmation submitted by Konoski makes plain that he cannot speak to

the reasonable rate for first-years in civil rights matters because he does not employ any associates. (Zelman Aff. Ex. A ¶ 4 ("We do not have an associate at our practice.").) Rather, when additional help is needed, Konoski's firm retains an "of counsel" attorney to provide it. (Id.) The fact that Konoski himself typically bills services provided by those experienced attorneys at $250 to $300 per hour strongly suggests that such a rate would not be appropriate for attorneys fresh out of law school.

As an alternative, defendants propose that a reasonable fee would be $200 per hour for Denton and Lawrence and $100 per hour for Schommer. But the Court fails to see any reason why the services provided by some first-years should be billed at a higher rate than others.[5] Billing similarly experienced lawyers at different rates is, at best, questionable. And here, where plaintiff has failed to produce any facts justifying a higher (or lower) rate for certain associates, the Court concludes that it would be plainly unreasonable to bill their work at different rates.

The fact that defendants failed to object to that nonsensical practice is troubling, but it does not control the outcome. See Disabled Patriots of Am., Inc. v. Niagara Grp. Hotels, LLC, 688 F. Supp. 2d 216, 221-22 (W.D.N.Y. 2010). Under Section 1988, plaintiff is not entitled to a requested rate merely because defendants fail to oppose it; rather, he may receive only those fees the Court deems reasonable. See 42 U.S.C. § 1988(b). As such, the Courts of Appeals are largely united in finding that "district court[s] may, consistent with the statute, examine the reasonableness of the fees requested, even when the request is not opposed." Curtis v. Bill Hanna Ford, Inc., 822 F.2d 549, 551 (5th Cir. 1987) (Title VII); accord Foley v. City of Lowell,

---

[5] Defendants appear to be under the impression that Denton and Lawrence had more experience than Schommer at the time they worked on this matter. (Opp. Br. at 9 (arguing that Schommer should be billed at a lower rate than Denton and Lawrence because he was a "newly admitted attorney with no experience to speak of," whereas they had been admitted in 2011 and 2012, respectively).) But a closer examination of the record reveals that not to be so. Rather, as the Court noted above, each of those three associates worked on this matter only in their first year of practice.

948 F.2d 10, 19 (1st Cir. 1991) (§ 1983); N.A.A.C.P. v. City of Evergreen, 812 F.2d 1332, 1334

(11th Cir. 1987) (per curiam) (§ 1983); Jordan v. Multnomah Cnty., 815 F.2d 1258, 1263 n.8

(9th Cir. 1987) (§ 1983); Northcross v. Bd. of Educ., 611 F.2d 624, 636 (6th Cir. 1979) (§ 1983).

And while the Third Circuit dissents from that consensus, United States v. Eleven Vehicles, 200

F.3d 203, 211-212 (3d Cir. 2000) (fee request under the EAJA) (holding that district courts may

not reduce fees without a sufficiently specific objection from the opposing party), the Second

Circuit has expressly declined to join it in that lonely and much-criticized position. Vincent v.

Comm'r of Soc. Sec., 651 F.3d 299, 308 n.1 (2d Cir. 2011) (fee request under the EAJA).

Accordingly, the Court concludes that Section 1988 authorizes it to scrutinize independently

plaintiff's request in the course of determining what fees are reasonable. See Disabled Patriots,

688 F. Supp. 2d at 222.

Plaintiff's claim that the hourly rate for the associates here should be based on their

current experience—including positions they obtained after leaving Zelman's firm—rather than

their experience at the time they worked on this matter is both unreasonable and unsupported by

precedent. (See DE #153 at 2 (noting that the rate should reflect Denton's later appointment as

an Administrative Law Judge, Lawrence's work as a land use attorney, and Schommer's work in

real estate).) It is well-established that "[e]ach attorney should receive fees based on the average

of his or her level of experience over the course of the litigation, as opposed to their current level

of experience." Marisol A. v. Giuliani, 111 F. Supp. 2d 381, 387 n.2 (S.D.N.Y. 2000) (citing

N.Y. State Nat'l Org. for Women v. Terry, 94 F. Supp. 2d 465, 473 (S.D.N.Y. 2000)).

Plaintiff misreads Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) to argue that

the Court must award rates reflecting counsel's current experience. Far from supporting

plaintiff's position, "Gierlinger . . . merely stands for the proposition that one who is billing as a

mid-level partner should be billed out at the current rate for mid-level partners as opposed to a sliding scale of fees over the course of the litigation." Davis v. N.Y.C. Hous. Auth., No. 90-CV-628 (RWS), 2002 WL 31748586, at *2 n.4 (S.D.N.Y. Dec. 6, 2002). That straightforward rule aims to account for the time value of money by recognizing that "compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." Gierlinger, 160 F.3d at 882 (quoting Missouri v. Jenkins, 491 U.S. 274, 284 (1989)). It provides no support for the windfall that plaintiff seeks by attempting to bill work done by first-years at the rates for fourth- or fifth-years. Davis, 2002 WL 31748586, at *2 n.4 (noting that such a claim would effectively "charge usurious 'interest' of the defendants").

Based on its experience with prior cases in this District, the inexperience of the associates in question, and the straightforward legal landscape of this case, the Court concludes that a paying client would agree to pay no more than $150 per hour for the work done by Denton, Lawrence, and Schommer. Such a rate sits at the high-end of the range for first-year associates and therefore adequately compensates plaintiff, even taking account of the challenging facts presented in this case. See Struthers, 2013 WL 5407221, at *7 (noting that the prevailing rate in the District for junior associates is between $100 and $200). Accordingly, the Court awards fees for work done by those first-year associates at a rate of $150 per hour.

3.    Paralegals

Although plaintiff initially sought $125 per hour for paralegal time, he subsequently reduced that request to $100 per hour. (DE #153 at 3.) That request falls on the high-end of the reasonable range awarded in this District. See Ferrara v. CMR Contracting LLC, 848 F. Supp.

2d 304, 313 (E.D.N.Y. 2012) ("In recent years, courts in this district have approved hourly fee rates in the range of . . . $70 to $100 for paralegal assistants.") (citation omitted).

Instead of explaining why the skills of the paralegals here justify a top-of-the-range award, plaintiff has not even identified the relevant paralegals. Indeed, even after the Court requested additional information about the paralegals in question, plaintiff failed to speak to their qualifications and instead simply reduce his demand from $125 to $100 per hour. (DE #152-53.) Where, as here, the plaintiff provides no information about the professional experience of the paralegals in question, courts in this District typically award no more than $80 per hour. See Barkley v. United Homes, LLC, No. 04-CV-875 (KAM) (RLM), 2012 WL 3095526, at *8 (E.D.N.Y. July 30, 2012) (citing Protection One Alarm Monitoring, Inc. v. Exec. Protection One Sec. Serv., LLC, 553 F. Supp. 2d 201, 209 (E.D.N.Y. 2008)); see also Ferrara, 848 F. Supp. 2d at 313 (awarding $75 per hour for paralegal time). Because the Court finds that such an award reasonably compensates plaintiff (and because he failed to justify more), the Court sets the rate for paralegal time at $80 per hour.

## B.     Hours Expended

"In ruling on applications for fees, district courts must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks and citations omitted). Courts do not ask "whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was

performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).

1.    Reductions in Hours Expended

Defendants raise various arguments as to why the number of hours expended by plaintiff's counsel should be reduced.

First, defendants contend that the 90 hours Asher billed for familiarizing himself with discovery materials were excessive given the scope of discovery, and that, in any event, the descriptions provided for those services are too vague. As a means of comparison, defendants note that during a recent SEC investigation attorneys at the law firm of Morgan, Lewis & Bockius LLP reviewed documents significantly more quickly than Asher did here. (Opp. Br. at 14-15.) That comparison is faulty because the initial and often cursory review of documents for responsiveness bears little resemblance to the in-depth examination needed to prepare for trial. (See Zelman Aff., Ex. C (noting that Asher both reviewed discovery documents and prepared trial questions).) Unlike merely checking off a responsiveness designation, such work requires counsel to read documents in depth, often more than once, analyze their content and develop questions designed to elicit needed testimony or draw out factual inconsistencies to impeach adverse witnesses. As such, the Court disregards entirely disregards that comparison as irrelevant to the issues here.

The Court agrees with defendants, however, that Asher's entries are generally inadequate because they do not disclose the specific subject matter reviewed or the witness for whom he prepared. See Soler v. G & U, Inc., 658 F. Supp. 1093, 1099 (S.D.N.Y. 1987). Similarly, the additional 41 hours Asher billed for "trial preparation" between July 29, 2013, and August 5, 2013, are too vaguely described for the Court to determine how much of that work, if any, was

14

duplicative or excessive.[6] See Marshall v. State of N. Y. Div. of State Police, 31 F. Supp. 2d 100, 106 (N.D.N.Y. 1998) ("Plaintiff's vague and blanket description of 'prepare for trial' in its time records does not adequately inform the Court of the nature and extent of the work performed and therefore provides an inadequate basis to determine the reasonableness of these claimed hours."). When faced with such entries, courts in this Circuit typically apply "a percentage reduction—frequently in the range of 20 to 30 percent—to the claimed hours." Mawere v. Citco Fund Servs., (USA) Inc., No. 09-CV-1342 (BSJ) (DF), 2011 WL 6779319, at *9 (S.D.N.Y. Sept. 16, 2011) (collecting cases), adopted by 2011 WL 6780909 (S.D.N.Y. Dec. 27, 2011). Since a 20 percent reduction adequately accounts for those general descriptions, the Court disallows 26.2 hours claimed by Asher related to those tasks.

Second, defendants contend that the 33 hours Zelman and Asher collectively spent conferring with one another should be reduced by half because allowing both attorneys to bill for those conferences is necessarily duplicative. To support their argument, defendants rely on Mann v. Reynolds, 46 F.3d 1055, 1061-63 (10th Cir. 1995), which affirmed the district court's decision to halve the time for intracounsel conferences in that particular case. But, "[t]here is no per se rule against the use of multiple attorneys . . . and the court is given considerable latitude in determining the reasonableness of the utilization of co-counsel." Macko v. Gen. Motors Corp. Fisher Body Div., No. 80-CV-716 (HGM), 1988 WL 73446, at *2 (N.D.N.Y. July 12, 1988). Especially when "confronted with a bevy of hostile lawyers for the multiple parties on the other side," a plaintiff may reasonably decide to "staff[] conferences or court appearances with more than one lawyer." Pro-Choice Network of W. N.Y. v. Project Rescue W. N.Y., 848 F. Supp. 400, 410 (W.D.N.Y. 1994) (quoting Seigal v. Merrick, 619 F.2d 160, 164 (2d Cir. 1980)).

---

[6] The Court accepts plaintiff's representation that 11 hours Asher billed on August 4, 2013, which did not have any corresponding description, was spent on trial-related tasks.

15

Nor does the Court find persuasive the argument that conferences between attorneys are necessarily inefficient. To the contrary, the feedback provided by co-counsel can allow an attorney to more easily identify and discard those strategies that are unlikely to succeed, before significant effort is expended or more fees accrued. Cf. Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp., 599 F. Supp. 509, 518 (S.D.N.Y. 1984) ("Multiple attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or law."). Thus, fees attributed to conferences between counsel will be reduced only where "the records demonstrate excessive communication." See Hargroves v. City of New York, No. 03-CV-1668 (RRM) (VMS), 2014 WL 1271039, at *6 (E.D.N.Y. Mar. 26, 2014) (citation omitted).

Here, defendants' claim that Zelman incurred unnecessary fees by retaining co-counsel rings particularly hollow because defendants also brought on two additional attorneys in the lead-up to trial. (DE #65, 70.) Given that defendants felt it necessary to staff additional attorneys on this matter, it was not unreasonable for plaintiff to similarly strengthen his trial team. Moreover, the Court is not persuaded that the relatively modest bills submitted for conferences between Asher and Zelman are either excessive or unnecessary. Therefore, those fees will not be reduced. See Hargroves, 2014 WL 1271039, at *6.

Third, defendants dispute 16 hours billed by Zelman for attending and observing trial in this case. Plaintiff claims that the "the vast majority of Mr. Zelman's billed time at trial was spent not observing, but arguing legal issues that came up during trial to the court," and that Zelman's limited trial observation was helpful in discussing summation strategies with Asher. Although most of Zelman's billing records state only that he "attended trial," Zelman argued various legal issues on at least four different days, including a long charge conference on August 5, 2013. (Trial Tr. 315-341, 614-632, 760-785, 903-1046.) The Court therefore disagrees with

defendants that the 16 hours Zelman billed consisted solely of trial observation. Instead, Zelman contributed to plaintiff's case by basing his legal arguments on trial observations. Since the number of hours claimed is reasonable, the Court declines to reduce or disallow those charges.

Fourth, defendants contend that the 31 hours spent by counsel in preparing plaintiff's fee request are excessive. As the fee application largely consists of legal boilerplate and rote citations to prior precedent, the Court agrees that the number of hours plaintiff claimed in connection with drafting and revising it is unreasonable. Accordingly, the following time entries related to the fee application are disallowed:

| Date | Attorney | Description | Hours Claimed | Hours Allowed |
|------|----------|-------------|---------------|---------------|
| 8/29/2013 | Schommer | Research and revise fee application | 1.3 | 0 |
| 8/30/2013 | Schommer | Revise fee application, Review hours | 1.7 | 0 |
| 9/3/2013 | Zelman | Edit and revise fee application | 1.0 | 0 |
| 9/3/2013 | Zelman | Discussion with Matthew Schommer | 0.4 | 0 |
| 9/3/2013 | Schommer | Discussion with David Zelman | 0.4 | 0 |
| 9/3/2013 | Schommer | Research and review fee application | 0.5 | 0 |
| 9/3/2013 | Asher | Review fee application | 2.5 | 1.5 |
| 9/4/2013 | Zelman | Revise fee affirmation | 1.6 | 0 |
| 9/4/2013 | Zelman | Confer with Ryan Asher | 0.4 | 0 |
| **Total Hours Disallowed** | | | | **Zelman: 3.4 hours** <br> **Asher: 1.0 hours** <br> **Schommer: 3.9 hours** |

Furthermore, the Court denies plaintiff's request for 6.5 hours spent drafting a letter about the impact of the Post-Trial Opinion because counsel failed to comply with the deadline imposed by then-Magistrate Judge Azrack. (DE #145-46.)

Finally, Zelman requests a total of 17.5 hours for researching and drafting a four-page letter in response to the Court's April 22, 2015 Memorandum & Order. (DE #153 at 4.)

According to plaintiff, that letter consumed 7.5 hours of Zelman's time and 10 hours of research by a heretofore-unknown associate, Joshua Tey. (Id.) That request is plainly excessive. Notably, counsel requested only 6.5 hours to research a similar letter regarding the effect of the Post-Trial Opinion on its fee request. (See DE #146.) There is no reason why a letter addressing a handful of discrete issues that arose in its fee motion should require almost triple the amount of time expanded on the earlier letter. (See DE #152.) Moreover, since plaintiff provides no information about the most recent associate to work on his case, Mr. Tey, the Court is left unable to calculate or assess the reasonableness of the fees attributed to his work. Accordingly, the Court denies fees for the work performed by Tey. In addition, the Court disallows 2.5 hours from the time attributed to Mr. Zelman because the issues raised in the letter could have been dealt with more expeditiously.

       2.      <u>Impermissible Entries</u>

Next, defendants argue that a number of counsel's entries are impermissibly vague, excessive, or unnecessary.

First, the Court does not agree with defendants that it was excessive to bill 2.5 hours for drafting a three-page letter motion <u>in limine</u> to exclude certain portions of the medical records, which were never disclosed in discovery. Confronted with records that had not been disclosed, counsel reasonably requested that defendants redact the prejudicial portions. Only after defendants refused did plaintiff's counsel seek—and ultimately obtain—judicial intervention mandating the redactions they sought. (Tr. 316-21.) As those fees stem from defendants' own unwillingness to negotiate a resolution with Walker, they are neither excessive nor unnecessary.

Second, defendants challenge an hour Zelman spent composing an e-mail to a police expert who was never disclosed or called at trial. Because plaintiff does not attempt to justify those fees, the Court declines to award them.

Third, the Court excludes time plaintiff's counsel expended on discovery letters to then-Magistrate Judge Azrack that were submitted in violation of her Individual Rules.[7] See Hon. Joan M. Azrack Indiv. R. III(D); (DE #16; DE dated 10/25/2011; DE #54; DE dated 4/19/2013). Thus, the Court disallows the following time from plaintiff's fee request:

| Date | Attorney | Description | Hours Claimed | Hours Allowed |
|------|----------|-------------|---------------|---------------|
| 10/24/2011 | Zelman | Sent letter to Court re: list of officers names | 0.3 | 0 |
| 10/24/2011 | Denton | Draft letter to Judge Azrack re: list of officers names | 0.8 | 0 |
| 10/24/2011 | Denton | ECF letter to Judge Azrack | 0.2 | 0 |
| 10/24/2011 | Zelman | Reviewed ECF bounce[8] | 0.1 | 0 |
| 10/25/2011 | Zelman | Review ECF | 0.1 | 0 |
| 11/15/2012 | Zelman | Draft status letter to Court | 0.5 | 0 |
| 11/15/2012 | Zelman | Reviewed ECF Bounce | 0.1 | 0 |
| 4/18/2013 | Zelman | Review letter to Judge | 0.3 | 0 |
| 4/19/2013 | Schommer | Revised letter to Judge and reviewed discovery | 1.0 | 0 |
| 4/19/2013 | Zelman | Send letter to Court | 0.6 | 0 |
| 4/19/2013 | Zelman | Review ECF | 0.2 | 0 |
| **Total Hours Disallowed** | | | | **Zelman: 2.2 Hours** **Denton: 1 Hour** **Schommer: 1 Hour** |

The Court disagrees with defendants, however, that time spent on the ensuing conferences with then-Magistrate Judge Azrack should be disallowed because such conferences did not stem from plaintiff's violations of the Rules and would have been held in any event.

---

[7] Defendants assert that time spent on correspondence to the Court on February 7, 2012, February 15, 2012, May 25, 2012, and June 28, 2013 should be disallowed. But since none of those letters were filed in violation of then-Magistrate Judge Azrack's Individual Rules, the Court declines to disallow time related to those letters.

[8] The Court does not award plaintiff time Zelman spent on October 24, 2011 and November 15, 2012 reviewing ECF bounces confirming the filing of an improper letter motion.

### C. Lodestar Calculation

Thus, the Court calculates the presumptively reasonable fee as follows:

| Attorney | Rate | Hours Claimed | Hours Disallowed | Fees Awarded |
|---|---|---|---|---|
| Zelman | $350 | 366.76 | 15.6 | $122,906.00 |
| Asher | $300 | 245.20584 | 27.2 | $65,401.75 |
| Denton | $150 | 43.6 | 1.0 | $6,390.00 |
| Lawrence | $150 | 24.3 | 0 | $3,645.00 |
| Schommer | $150 | 125.9 | 4.9 | $18,150.00 |
| Tey | - | 10 | 10 | $0 |
| Paralegals | $80 | 37.4 | 0 | $2,992.00 |
| **Total** | | **843.16584** | **58.7** | **$219,484.75** |

Since neither party has claimed that an adjustment of the lodestar is warranted, the Court declines to adjust it in either direction[9] and awards plaintiff $219,484.75 in fees.

## II. Costs

Plaintiff seeks reimbursement for costs totaling $5,232.96. Defendants urge the Court to disallow: (1) $564 in transcript costs for the depositions of Emergency Services Unit ("ESU") officers who responded to the precinct following the assault, and (2) Asher's parking and gas expenses.[10] Defendants' arguments are not persuasive. It was reasonable for plaintiff to depose the ESU officers, all of whom were identified by both parties as possible witnesses in the Joint Pretrial Order. (DE #67, at 8-9, 11-12.) Furthermore, courts have permitted counsel to recoup local transportation expenses as costs. See Tatum v. City of New York, No. 06-CV-4290 (PGG) (GWG), 2010 WL 334975, at *13 (S.D.N.Y. Jan. 28, 2010) ("Local transportation costs for attorneys that are billed to clients separately and not absorbed within the hourly rates charged to

---

[9] Plaintiff points to the success achieved and contingent nature of the action to justify the requested fees, but does not claim that either factor supports a modification of the lodestar.

[10] Defendants appear to argue that reviewing time records is a non-reimbursable expense and therefore Asher's entries August 15 and August 16, 2013 entries should be denied as costs. But Asher does not claim those entries as costs, rather they are fee requests. (Zelman Ex. C at 4.) Given that defendants' failure to provide any authority holding such time is non-billable as a matter of law and that review of time records is generally necessary to compile a fee motion, the Court declines to reduce those entries.

clients are generally recoverable.") (quoting Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC, No. 05-CV-6757 (LTS) (MHD), 2009 WL 466136, at *7 (S.D.N.Y. Feb. 20, 2009)).

However, plaintiff may not recover the $3,000 charged by his medical expert, Dr. Karen Jubanyik, because § 1988 does not allow the shifting of expert witness fees in § 1983 actions. See W. Virginia Univ. Hospitals, Inc. v. Casey, 499 U.S. 83, 102 (1991). Accordingly, the Court denies Walker's request to shift its expert fees to defendants and instead awards only the $40 statutory witness fee authorized under 28 U.S.C. § 1821(b).

Relying on Weather v. City of Mount Vernon, No. 08-CV-192 (RPP), 2011 WL 2119689 (S.D.N.Y. May 27, 2011), plaintiff argues that Congress abrogated Casey by amending § 1988. (DE #153 at 3.) That amendment, now codified in subsection (c), provides that:

> In awarding an attorney's fee under subsection (b) of this section
> in any action or proceeding to enforce a provision of section 1981
> or 1981a of this title, the court, in its discretion, may include expert
> fees as part of the attorney's fee.

42 U.S.C. 1988(c). But because that subsection speaks only to suits under § 1981 or § 1981a, it authorizes expert-fee shifting only in those instances and leaves intact the Casey rule with respect to all other claims, including those under § 1983.[11] See Wilder v. Bernstein, 975 F. Supp. 276, 287 n.12 (S.D.N.Y. 1997) ("As Congress explicitly limited the amendment to cases arising under § 1981, Casey still prohibits the award of expert fees in § 1983 cases."); see also Stanczyk, 990 F. Supp. 2d at 253 (same); Connor v. Ulrich, 153 F. Supp. 2d 199, 204 (E.D.N.Y. 2001) (same).[12] In coming to the contrary conclusion, Weather misread both the plain text of the

---

[11] Murphy v. Arlington Central School District Board of Education, 402 F.3d 332, 336 (2d Cir. 2005), which plaintiff cites, is not to the contrary. Far from holding that § 1988(c) worked a total abrogation of Casey, Murphy discussed that section only in the course of interpreting the meaning of the congressional silence on expert fees under the analogous fee-shifting provisions of the Individuals with Disabilities Education Act. 402 F.3d at 336. Moreover, Murphy was itself reversed by the Supreme Court. 548 U.S. 291, 303 (2006). Because Murphy provides no support for plaintiff's erroneous interpretation and is no longer good law, the Court need not address it further.

[12] Although Local Rule 54.1(c)(3) and 28 U.S.C. § 1920(6) permit costs to be awarded for court-appointed experts, such provisions are inapplicable to experts retained by private parties.

statute and failed to distinguish the relevant precedent. As such, the Court concludes that Weather was wrongly decided and declines to follow it.

Lastly, plaintiff seeks interest on the costs awarded. "An award of interest on costs is appropriate 'since counsel have been out-of-pocket for those costs for a substantial period of time.'" Manzo v. Sovereign Motor Cars, Ltd., No. 08-CV-1229 (JG) (SMG), 2010 WL 1930237, at *12 (E.D.N.Y. May 11, 2010) (quoting Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 548 (S.D.N.Y. 2008)). Defendants offer no objection to that reasonable request and the Court therefore awards interest at the rate specified by 28 U.S.C. § 1961(a). Interest begins to run on damages "only as they become due." Chandler v. Bombardier Capital, Inc., 44 F.3d 80, 84 (2d Cir. 1994). But courts frequently simplify that calculation by relying on the midpoint date of when the various costs became due. See Manzo, 2010 WL 1930237, at *12 n.21. Costs in this action were first incurred on May 24, 2011 and the last cost for which plaintiff seeks reimbursement was incurred on September 3, 2013, resulting in a midpoint of July 13, 2012.

Therefore, the Court awards plaintiff $2,272.96 in costs, plus interest at the rate specified in 28 U.S.C. § 1961(a) from July 13, 2012 until the entry of Judgment.

## CONCLUSION

For the reasons stated above, the Court withdraws its referral of plaintiff's fee request and awards (1) $219,484.75 in fees and (2) $2,272.96 in costs plus interest.

SO ORDERED.

Dated: July ⧸27⧸ , 2015
   Brooklyn, New York

         s/Carol Bagley Amon

         Carol Bagley Amon
         Chief United States District Judge